IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:22CR490 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE BRIDGET MEEHAN BRENNAN |
| -vs- | : | |
| | : | |
| OBED SANCHEZ, | : | **DEFENDANT'S MOTION TO SUPPRESS** |
| | : | |
| Defendant. | : | |

Obed Sanchez, through counsel, respectfully moves this Honorable Court to suppress the firearm seized from under a pillow after he was in law enforcement custody and outside of the room where the gun was found. The search was executed in violation of Mr. Sanchez's Fourth Amendment rights, without a valid exception to the warrant requirement. A memorandum in support of this Motion is attached and incorporated hereto.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/David E. Johnson*
DAVID E. JOHNSON
Assistant Federal Public Defender
Ohio Bar: 0081505
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: David_Johnson@fd.org

## MEMORANDUM

**I.     Facts related to the search of the bed where Mr. Sanchez had been sleeping.**

On March 3, 2022, members of the NOVF task force, Lorain Division, sought to execute an Ohio Adult Parole Authority ("APA") warrant to arrest Obed Sanchez. As law enforcement approached the apartment where he was staying for the evening, they encountered the couple who rented the apartment. One of the pair stated she "was fine with USMS personnel entering her apartment as long as they did not break down the door." (Exh. A).[1] As task force members entered the apartment, they announced their presence and their intent to arrest Mr. Sanchez.

In response, Mr. Sanchez arose from his bed and "approached officers, who were now inside, with hands raised and was arrested without incident." (Id.) Task force members also asked Mr. Sanchez's girlfriend to leave the bedroom. With Mr. Sanchez and his girlfriend out of the bedroom and Mr. Sanchez in law enforcement custody, task force members "approached the bed and could see there were no other people present." (Id.) The task force therefore had accomplished their objective of apprehending Mr. Sanchez. While that should have ended their time in the apartment, the task force went one step further. One task force member "flipped the pillow where Sanchez had been laying" and found a firearm thereunder. (Id.)

On August 25, 2022, Mr. Sanchez was charged with possessing a firearm after a felony conviction, under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (R. 9: Indictment). The government later filed a Superseding Indictment, which additionally alleged Mr. Sanchez's prior offenses occurred

---

[1] The information contained in this section was obtained through discovery and/or investigation and is intended to provide background as to the unlawful search. Mr. Sanchez is not admitting to any of the allegations in the indictment or the surrounding circumstances.

on separate occasions. (R. 35: Superseding Indictment). Mr. Sanchez files the instant Motion because law enforcement violated his Fourth Amendment rights.

## II.    Law and Argument

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const., Amend. IV. The United States Supreme Court has recognized that, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 586 (1980); *see also O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.").

The government claims Mr. Sanchez was under the supervision of the Adult Parole Authority (APA). Although supervisees would have a reduced expectation of privacy, they are not deprived of their Fourth Amendment rights altogether. Here, there was no applicable exception to the warrant requirement.  The Court should find task force members violated Mr. Sanchez's Fourth Amendment rights when they searched the bed and under a pillow.

If the government fails to demonstrate that an exception to the warrant requirement existed, the exclusionary rule requires the suppression of any evidence seized in violation of the Fourth Amendment and further requires the exclusion of all evidence subsequently obtained as a result of

that particular violation. *Wong Sun v. United States*, 371 U.S. 471 (1962); *Mapp v. Ohio*, 367 U.S. 643, 647 (1961).

In the instant case, Mr. Sanchez did not consent to a search. There is no indication from task force reports that either task force agents requested a search of Mr. Sanchez's bedroom, or that Mr. Sanchez granted such a search. Thus, this exception is inapplicable.

Further, officers were not conducting a valid search incident to Mr. Sanchez's arrest. The Supreme Court has held that there is an exception to acquiring a search warrant when a search is incident to a lawful arrest. *New York v. Belton*, 453 U.S. 454, 459 (1981). In *Belton*, a car was stopped for travelling at excessive speeds *Id.* at 455. The officer smelled marijuana and saw an envelope on the floor of the car which he suspected contained marijuana. *Id.* at 456. Upon arresting the vehicle's occupants for possession, the officer searched the passenger side of the vehicle and found cocaine in the defendant's jacket pocket. *Id.* The Court held that when the occupant of a vehicle is lawfully arrested, the side of the vehicle and any containers therein may be searched without a warrant or further showing of probable cause. *Id.* at 460.; *see also Chimel v. California*, 395 U.S. 752 (1969) (a lawful custodial arrest creates a situation which justifies contemporaneous search without a warrant of the person arrested and of the immediately surrounding area). This exception is primarily intended to ensure that a suspect who is being arrested does not have immediate access to weapons or the ability to destroy evidence. *Id.* These justifications are absent where a search is remote in time or place from the arrest. *Preston v. United States*, 376 U.S. 363, 367 (1964). Further, the Supreme Court has limited what areas that could be searched incident to arrest. "If there is no possibility that an arrestee could reach into the area that law enforcement

4

officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Arizona v. Gant*, 556 U.S. 332, 339 (2009).

Here, at the time the search occurred, the area searched – the bed where Mr. Sanchez had awoken from – was not a place where Mr. Sanchez could reach. As task force reports indicate, upon hearing the task force announce its presence, Mr. Sanchez arose from his bed and "approached officers, who were now inside, with hands raised and was arrested without incident." (Exh. A). The search of the bed occurred after Mr. Sanchez had gotten out of the bed and was taken into custody. (*Id.*) At the time of the search, therefore, Mr. Sanchez was detained and secured. The bed and pillow were not within Mr. Sanchez's "reaching distance" at the time of the search. *Gant*, 556 U.S. at 351. Further, the offense of arrest here was an APA warrant. There was no chance the bed or pillow could have contained evidence relating to the offense of arrest. Therefore, the bases for lawful search incident to arrest are not present in this case.

Next, the circumstances of this case demonstrate that the search was not a valid protective sweep. The seminal case which provides the parameters of a protective sweep, *Maryland v. Buie*, 494 U.S. 325 (1990), is summarized as follows:

> To protect their safety while making, and after, an arrest, law enforcement officers may also perform a "protective sweep" of the residence. A protective sweep is an exception to the general requirement that officers need exigent circumstances and probable cause, or a search warrant, to conduct a search of a person's home. A protective sweep involves only a "cursory inspection of those spaces where a person may be found" and ends when the reasonable suspicion of danger is dispelled. In conducting a protective sweep, officers are permitted to look in "closets and other spaces immediately adjoining the place of arrest"—with or without probable cause or reasonable suspicion—because the threat of danger is greatest there. To search more removed areas of the residence, however, officers must have at least a reasonable suspicion of the presence of dangerous individuals. That is, there must be articulable facts which, taken together with the rational inferences from those

5

facts, would warrant a reasonably prudent officer in believing that the area to be swept *harbors an individual posing a danger to those on the arrest scene*.

*Buie*, 494 U.S. at 327-336 (emphasis added) (internal citation marks omitted); *United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995).

Here, the task force's report describes a brief security sweep, but it also demonstrates why any an additional sweep was unnecessary. After arresting Mr. Sanchez, task force members then asked Mr. Sanchez's girlfriend to leave the bedroom. With Mr. Sanchez and his girlfriend out of the bedroom and Mr. Sanchez in law enforcement custody, task force members "approached the bed and could see there were no other people present." (Exh. A). Based on the task force members' own reports, it is clear that they understood the bedroom was uninhabited after Mr. Sanchez and his girlfriend left the room. Once officers cleared Mr. Sanchez and his girlfriend out of the bedroom and conducted a brief search to ensure there were no other inhabitants, the need for any protective sweep had concluded. Furthermore, a search underneath a pillow is not a location where a person could be found. The task force members' additional step of searching an empty bed and underneath its pillow was in violation of Mr. Sanchez's Fourth Amendment rights.

Finally, "exigent circumstances" were not present. "Where, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant." *McDonald v. United States*, 335 U.S. 451, 454 (1948). In fact, the "exigent circumstances exception requires . . . an emergency [to] justif[y] a warrantless search." *Riley v. California*, 573 U.S. 373, 402 (2014). There was no "emergency" here. As stated above, Mr. Sanchez immediately turned himself in to task force custody. Mr. Sanchez's girlfriend, too, readily complied with the task force's request to leave the bedroom. There were no "exigent

6

circumstances" that could justify the need for a search of Mr. Sanchez's bed. If they had wanted to search his bed, task force members had ample time and opportunity to procure a search warrant. No circumstances were present that would have prevented them from obtaining a warrant. Because they did not, the task force violated Mr. Sanchez's Fourth Amendment rights.

**III.  Conclusion**

"The investigation of crime would always be simplified if warrants were unnecessary. But the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law." *United States v. Chadwick*, 433 U.S. 1, 6–11 (1977). For this reason, warrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. *McDonald v. United States*, 335 U.S. 451, 456, (1948); *Johnson v. United States*, 333 U.S. 10, 14–15 (1948).

Here, task force members had a warrant to arrest Mr. Sanchez, but that warrant did not grant them an unfettered right to search the room where he was staying that evening. To search Mr. Sanchez's room, law enforcement required a warrant. No exception to the warrant requirement was present here. The Court therefore should suppress the firearm found under Mr. Sanchez's pillow because the task force discovered it in violation of his Fourth Amendment rights.

                    Respectfully submitted,

                    STEPHEN C. NEWMAN
                    Federal Public Defender
                    Ohio Bar: 0051928

/s/*David E. Johnson*
DAVID E. JOHNSON
Assistant Federal Public Defender
Ohio Bar: 0081505
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: David_Johnson@fd.org.